# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MADILYNN MARY ELLEN EVERY,    )
         )
       Plaintiff,    )
         )
       v.    )      1:25cv560
         )
MGM TRUCKING LLC, et al.,    )
         )
       Defendants.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on "Plaintiff's Motion for Leave to Amend Complaint and Add New Party" (Docket Entry 9) (the "Motion"), which Defendants oppose (see Docket Entry 10). For the reasons that follow, the Court should grant the Motion and remand the case to the state court in which it originated.

## BACKGROUND

Plaintiff Madilynn Mary Ellen Every (the "Plaintiff"), a North Carolina resident (see Docket Entry 2 (the "Original Complaint") at 1),[1] initiated the instant action in state court against Defendants MGM Trucking LLC ("MGM") and Santo Miguel ("Defendant Miguel") (collectively, the "Defendants"). Defendants, Texas and Florida residents, respectively (see Docket Entry 1 at 2),[2] removed the

---

    1  Docket Entry page citations utilize the CM/ECF footer's pagination.

    2  "For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all of its members." Central W. Va. Energy Co. v. Mountain State
                           (continued...)

case during discovery (see id. at 3), pursuant to this Court's diversity jurisdiction, see 28 U.S.C. §§ 1332(a), 1441(b). Following removal and continued discovery (see Docket Entry 9 at 2-3), Plaintiff filed the Motion and attached a proposed amended complaint (see Docket Entry 9-2 (the "Amended Complaint")) seeking to add DW Express, Inc. ("DW Express"), a North Carolina corporation (id. at 3), as a defendant and to "assert[] allegations and claims against it" (Docket Entry 9 at 1).

Those allegations and claims relate to a 2023 automobile collision between Plaintiff's vehicle and an MGM-owned truck driven by its employee, Defendant Miguel (see Docket Entry 2 at 2), from which Plaintiff allegedly "suffered serious personal injuries" (id. at 3). According to the Motion, "Plaintiff filed [the O]riginal Complaint . . . believ[ing MGM] to be the owner of the tractor-trailer involved" in the collision (Docket Entry 9 at 1), but "Defendants [later] revealed [in discovery] that another company, [ ] 'DW Express,' owned the trailer" (id. at 2). (See also Docket Entry 10-1 at 5 (stating in answer to interrogatory that "DW Express is the company who [sic] owns the trailer").)

As compared to the Original Complaint, the Amended Complaint adds a claim for negligence and negligence per se against DW

---

2(...continued)
Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (parentheticals omitted). Here, MGM "has one member named Mirian Valdez, who is a citizen of Texas." (Docket Entry 1 at 2.)

2

Express (see Docket Entry 9-2 at 7-9), adds DW Express to Plaintiff's respondeat superior claim against MGM (see id. at 6-7; Docket Entry 2 at 4-5), and retains the Original Complaint's negligence claim against Defendant Miguel (compare Docket Entry 9-2 at 5-6, with Docket Entry 2 at 3-4). The Amended Complaint also alleges that DW Express owned the trailer (see Docket Entry 9-2 at 4), entered into an "agreement with [ ] MGM . . . [regarding] aspects of the [relevant] transportation" (id. at 8), and shared control with MGM over Defendant Miguel's actions (see id. at 4).

Opposing the Motion (see Docket Entry 10), Defendants contend that the "add[ition of] a nondiverse defendant to the case[ would] effectively destroy diversity jurisdiction" (id. at 1) and require remand (see id.). In their view, the Court should deny the Motion and maintain jurisdiction (A) because, for "four months prior to the filing of t[he [M]otion[,] . . . [P]laintiff knew the identity of the trailer owner" (id. at 2; see also id. ("[O]n March 27, 2025, [ ] MGM served its discovery responses, confirming that the owner of the trailer was DW Express.")) and (B) because the record lacks "evidence [that denial would] prejudice [ P]laintiff" (id.).

Conversely, Plaintiff contends that "Defendants did not disclose sufficient information for Plaintiff to identify which one of five possible 'DW Express' entities was the correct one" (Docket Entry 11 at 1; see also Docket Entry 11-1 at 2 (listing search results of similarly named entities in U.S. Department of

3

Transportation database)), "despite the fact that [the i]nterrogatory [ ] requested Defendants 'give the full name(s) and addresses(es) for the owner(s)' of the trailer" (Docket Entry 11 at 1 (internal brackets omitted) (quoting Docket Entry 10-1 at 5)). (See also id. at 1-2 ("[Another, separate i]nterrogatory [ ] asked that[,] if the trailer was leased, that the name, address, and telephone number be provided . . . . Again, only the name of 'DW Express' was provided in Defendants' response.").) According to Plaintiff, "nothing in [ ] Defendants' production of documents to [ ] Plaintiff supporting those [answers] included . . . information about 'DW Express.'" (Docket Entry 11 at 2.) Plaintiff represents that she gained sufficient information regarding DW Express's identity only after one of MGM's employees "further identified [ ] DW Express [as an] entity in Salisbury, NC [and] as the owner of the trailer" (Docket Entry 9 at 3), during a deposition on July 8, 2025 (see id.), and that she filed the Motion one month later (see Docket Entry 11 at 3).

Plaintiff further contends that "[t]here is no undue delay, bad faith, or dilatory motive on [her] part [ ], and [that] no undue prejudice will result to [ ] Defendants from the proposed amendment." (Docket Entry 9 at 3). Elaborating, Plaintiff disputes Defendants' assertion that she knew of DW Express's identity "four months prior to the filing of t[he [M]otion" (Docket Entry 10 at 2) and instead posits that "the Motion was made [ ] one

month after [the] deposition in which [MGM's employee] identified [DW Express as a] North Carolina company" (Docket Entry 11 at 3). Moreover, Plaintiff reasons that "there can be no prejudice to [ ] Defendant[s]" (id.), "given the recency of the information as well as the potential for shar[ed] liability [between MGM and DW Express]" (id.), and that denial of the Motion would force her to proceed "against DW Express in state court while prosecuting this action in federal court against Defendants" (id.). Maintaining those parallel suits, in her view, "[would] be inefficient, costly, and a waste of judicial resources[ and ] could result in inconsistent procedural and substantive rulings . . . even on identical issues." (Id. at 3-4.) Plaintiff therefore requests that the Court grant the Motion and "remand[ the case] to the [North Carolina] Superior Court of Cabarrus County" (id. at 4).

**DISCUSSION**

"When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e) ('Section 1447(e)') . . . ." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).[3] "Section 1447(e) provides the district court with two options: 'If after removal the

_____

    3  "[T]his decision is not controlled by a [Federal Rules of Civil Procedure (the 'Rules')] Rule 19 analysis." Mayes, 198 F.3d at 462; see also Gum v. General Elec. Co., 5 F. Supp. 2d 412, 414 (S.D. W. Va. 1998) ("[V]irtually every court to address the joinder question since the enactment of § 1447(e) views the statute as signaling a departure from a strict Rule 19 analysis . . . ." (italics and internal quotation marks omitted)).

5

plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.'" <u>Graves v. Wells Fargo Bank, N.A.</u>, No. 1:14cv398, 2015 WL 12911637, at *1 (M.D.N.C. June 11, 2015) (quoting 28 U.S.C. § 1447(e)). "These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." <u>Mayes</u>, 198 F.3d at 462.[4]

Section 1447(e) gives "flexible, broad discretion[]" to the district court, <u>id.</u> at 463 (internal quotation marks omitted), which may "consider all relevant factors, including: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for amendment, (3) whether the plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities," <u>id.</u> at 462 (internal quotation marks omitted) (parentheticals added). "The district court, with input

---

[4] "State law claims can be brought in federal court [or removed from state court, <u>see</u> 28 U.S.C. § 1441,] if diversity jurisdiction exists pursuant to [Section] 1332(a), which requires complete diversity of parties in a case. Complete diversity of parties means that no party on one side may be a citizen of the same State as any party on the other side." <u>Williams v. Glover</u>, Civ. Action No. 6:10-1591, 2010 WL 6872297, at *4 n.7 (D.S.C. July 12, 2010), <u>recommendation adopted</u>, 2011 WL 2682170 (D.S.C. July 11, 2011), <u>aff'd</u>, 461 F. App'x 315 (4th Cir. 2012).

6

from the parties, should balance the equities in deciding whether the plaintiff should be permitted to join a nondiverse defendant." Id. at 463.

As to the first factor — whether the plaintiff requests joinder to defeat federal jurisdiction — "if the defendant[] can carry the heavy burden of proving fraudulent joinder, that fact should be a factor — and perhaps the dispositive factor — [in] the court['s] consider[ation]," id. at 463.[5] "[T]he absence of fraudulent joinder[, however,] does not require acceptance of an amendment to the complaint that would result in remand." Copley v. Argus Energy, LLC, Civ. Action No. 3:13-25305, 2014 WL 12692294, at *3 (S.D. W. Va. Mar. 21, 2014) (internal brackets and quotation marks omitted). Instead, "courts often consider the chronology of events and the timing of the plaintiff's request . . . [ and have] suggested caution where no attempt was made to add the nondiverse defendant until after removal although the relevant facts . . . were in the [plaintiff's] possession [ ] well before suit was filed." Sour Grapes, LLC v. Vinum USA, Inc., No. 1:22cv203, 2023 WL 9775788, at *4 (W.D.N.C. Nov. 28, 2023) (internal quotation

---

5 "Th[e fraudulent joinder] doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction," Mayes, 198 F.3d at 461, so long as the defendant "show[s] that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor," id. at 464 (internal quotation marks omitted).

marks and ellipses omitted). "Conversely, courts have allowed amendments to add nondiverse defendants where the plaintiff could not have identified all the defendants without discovery." Id. (internal quotation marks omitted).

Here, Defendants do not assert fraudulent joinder (see Docket Entry 10 at 1-2), and, given "the chronology of events and the timing of [ P]laintiff's request," Sour Grapes, LLC, 2023 WL 9775788, at *4 (internal quotation marks omitted), the Court should conclude that Plaintiff pursues the Motion for reasons unrelated to defeating jurisdiction. Most notably, the record indicates that "Plaintiff[] seek[s] the amendment based upon new information uncovered during discovery," Plemmons v. State Farm Mut. Auto. Ins. Co., Civ. Action No. 7:12-495, 2012 WL 13008154, at *3 (D.S.C. Aug. 14, 2012), namely, that "DW Express[] owned the trailer" involved in the collision (Docket Entry 9 at 2 (internal quotation marks omitted)) and that the relevant "DW Express entity [exists] in Salisbury, NC" (id. at 3). Those facts "were [not] in [Plaintiff's] possession [ ] well before [she filed] suit," Sour Grapes, LLC, 2023 WL 9775788, at *4 (internal quotation marks omitted), as the Original Complaint alleged "[u]pon information and belief[ that ] MGM owned the [ ] tractor trailer" (Docket Entry 2 at 2; see also Docket Entry 9 at 1 ("[Plaintiff] believed [MGM] to be the owner of the tractor-trailer . . . .").  "This new information is a legitimate reason for Plaintiff now to seek

8

amendment of [the O]riginal [C]omplaint and joinder of [DW Express] as a co-defendant." Boatwright v. Beazer Homes USA, Inc., No. 4:09cv1268, 2009 WL 4808586, at *3 (D.S.C. Dec. 9, 2009). Additionally (as documented in the Background section), the Amended Complaint "claims that [MGM] and [DW Express] were joint venturers and therefore share liability. This is a[nother] valid reason to join [DW Express] as a defendant." R.J. Reynolds Tobacco Co. v. Johns Manville Int'l, Inc., No. 1:00cv673, 2001 WL 823604, at *3 (M.D.N.C. July 3, 2001) (parenthetical omitted).

As to the second factor, "[t]o determine whether a plaintiff has been dilatory in asking for amendment, courts consider [the] plaintiff[']s actions between the time [she became] aware of information potentially subjecting the [nondiverse] defendant to liability and the filing of a motion to amend." Curry v. Omni Hotel Mgmt. Corp., Civ. Action No. 9:21-3587, 2022 WL 4481506, at *3 (D.S.C. Sept. 27, 2022); see also 4 Suns Ranch, LLC v. Buckeye Oil Producing Co., No. 5:12cv110, 2014 WL 1017907, at *5 (N.D. W. Va. Mar. 17, 2014) ("[D]ilatory is defined as 'tending to cause delay or to gain time or to put off a decision.'" (internal brackets omitted) (quoting Black's Law Dictionary 522 (9th ed. 2009))). Pertinent actions include, among others, the plaintiff's "diligent efforts to determine the identities of the proper [defendants] to name in an amended complaint as well as significant difficulty encountered in obtaining from [d]efendant[s] th[ose]

9

identities," <u>Williams v. Walmart Stores E., LP</u>, No. 5:20cv1090, 2021 WL 1616174, at *3 (D.S.C. Apr. 26, 2021).

Defendants contend that, "four months prior to the filing of th[e M]otion . . . , [P]laintiff knew the identity of the trailer owner." (Docket Entry 10 at 2; <u>see also</u> Docket Entry 9 at 5 (certifying the Motion's filing on August 8, 2025); Docket Entry 10 at 2 ("[O]n March 27, 2025, [ ] MGM served its discovery responses, confirming that the owner of the trailer was DW Express.").) For her part, Plaintiff insists that the March 27 discovery responses "did not disclose sufficient information for Plaintiff to identify which one of five possible 'DW Express' entities was the correct one" (Docket Entry 11 at 1), and that Defendants' subsequent document productions did not fully identify DW Express (<u>see</u> <u>id.</u> at 2), as well as that "[i]t was not until [the July 8] deposition that [MGM's employee] confirmed that the relevant 'DW Express' entity leasing the trailer to [ ] MGM was the one in Salisbury, North Carolina" (<u>id.</u>), after which Plaintiff filed the Motion on August 8 (<u>see</u> <u>id.</u> at 3).

Upon "stud[ying P]laintiff's road to the eventual discovery of [DW Express, the Court should] find[ Plaintiff] was reasonably prompt." <u>Estate of King v. McElroy Coal Co.</u>, No. 5:16cv1, 2016 WL 1241506, at *5 (N.D. W. Va. Mar. 24, 2016). To begin, after alleging "[u]pon information and belief[ that ] MGM owned the [ ] tractor trailer" (Docket Entry 2 at 2), Plaintiff requested

10

information regarding its ownership, including "the full name(s) and addresses(es) of the owner(s)" (Docket Entry 10-1 at 5) "and the name, address, and telephone number" of any lessor (id.). When Defendants (who do not contend otherwise (see Docket Entry 10 at 1-2)) failed to provide identifying information beyond DW Express's name, "Plaintiff then researched the matter," Correa v. Caliber Bodyworks of Va., LLC, No. 3:23cv578, 2024 WL 37207, at *5 (E.D. Va. Jan. 3, 2024). (See Docket Entry 11-1 at 2 (indicating electronic records search resulting in list of multiple "DW Express" entities).) When review of Defendants' document productions failed to reveal clarifying details (see Docket Entry 11 at 2), Plaintiff used the July 8 deposition "to further investigate [DW Express's] involvement [and identity]," Boykin v. Spectrum Lubricants Corp., No. 3:13cv417, 2014 WL 12631658, at *5 (D.S.C. Mar. 7, 2014). (See Docket Entry 9-1 at 6.) As such, "Defendant[s'] assertion that Plaintiff has been dilatory in amending the [Original] Complaint to add [an entity] Defendant[s] previously [failed] to identify [fully] is without merit. The Court [should] find[] that [ ] Plaintiff has not been dilatory in asking for amendment." Williams, 2021 WL 1616174, at *3 (emphasis added).[6]

---

6 Moreover, for analogous amendment requests governed by the Rules (rather than Section 1447(e)), "[d]elay alone . . . should not suffice as reason for denial," Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980). That includes delays similar to
(continued...)

As to the third factor — whether a plaintiff will be significantly injured if the court denies the request for amendment — "courts consider the extent to which the proposed claims are intertwined with claims already in the case and whether a plaintiff could maintain a separate suit against the proposed nondiverse defendant." Burnette v. Red Roof Inns, Inc., No. 1:19cv320, 2020 WL 3066641, at *6 (W.D.N.C. Apr. 22, 2020), recommendation adopted, 2020 WL 3063919 (W.D.N.C. June 8, 2020).

While Defendants insist on the existence of "no evidence of prejudice to [ P]laintiff" (Docket Entry 10 at 2), Plaintiff forecasts that a separate, state court suit against DW Express would prove "inefficient, costly, and . . . could result in inconsistent procedural and substantive rulings . . . even on identical issues" (Docket Entry 11 at 3-4). To that latter point, "Plaintiff's proposed claims against [DW Express] arise out of the

---

6(...continued)
the "four[-]month[]" period (Docket Entry 10 at 2) of which Defendants complain. See, e.g., Ransom v. Aspen Med. Prods., LLC, No. 2:23cv407, 2024 WL 6468950, at *6 (E.D. Va. Mar. 6, 2024) ("Although [plaintiff] filed for leave to amend . . . [over three months] after [learning of the relevant information,] . . . discovery has not been completed. . . . [Defendant] thus has ample time to address the few paragraphs added to the complaint which should not have been a surprise in any event."); Allegis Grp., Inc. v. Bero, 689 F. Supp. 3d 81, 105 (D. Md. 2023) ("I do not consider the [nearly three-month] delay so egregious as to justify denial of leave to amend."), aff'd, No. 23-2023, 2025 WL 2141298 (4th Cir. July 29, 2025); GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 380-81 (M.D.N.C. 1988) (finding delay of "only three months" not "extreme" but denying amendment due to "blatant delay, in combination with the showing of plaintiff's bad faith in submitting the amendment").

12

same set of facts on which Plaintiff's claims against Defendant[s] are based," <u>Modlin v. United Grocery Outlet, Inc.</u>, No. 1:21cv19, 2021 WL 9816247, at *7 (W.D.N.C. Apr. 14, 2021), <u>recommendation adopted in part</u>, 2021 WL 3721446 (W.D.N.C. Aug. 23, 2021); the Amended Complaint's factual allegations differ negligibly from those in the Original Complaint, save new allegations regarding DW Express's ownership of the trailer (<u>see</u> Docket Entry 9-2 at 4) and partial control over Defendant Miguel's actions (<u>see</u> <u>id.</u>). Similarly, the Amended Complaint's respondeat superior claim against MGM and DW Express (<u>see</u> <u>id.</u> at 6-7) "seeks to bring [a] claim[] against [DW Express] under the same theor[y] of liability," <u>Modlin</u>, 2021 WL 9816247, at *7, that Plaintiff pursued in the Original Complaint (<u>see</u> Docket Entry 2 at 4-5). Denial, therefore, would significantly prejudice Plaintiff by requiring her "to maintain litigation in multiple forums regarding the same events," <u>Modlin</u>, 2021 WL 9816247, at *7.

Fourth and finally, the Court considers "any other factors bearing on the equities," <u>Mayes</u>, 198 F.3d at 462 (internal quotation marks omitted), including "prejudice" to the non-movant, <u>C.A. ex rel. Achumba v. American Honda Motor Co.</u>, No. 09cv2159, 2009 WL 4730506, at *3 (D. Md. Dec. 1, 2009), and "judicial efficiencies," <u>Burnette</u>, 2020 WL 3066641, at *7.

"Whether an amendment is prejudicial [ ] often [depends on] . . . the nature of the amendment and its timing. A common example

13

is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." Colavita v. Boston Sci. Corp., No. 3:11cv585, 2012 WL 2577086, at *3 (W.D.N.C. July 3, 2012) (internal brackets, citation, and quotation marks omitted). Here, nothing in the record indicates that adding DW Express and remanding the case would prejudice Defendants.[7] "[T]he case has not developed fully. While some discovery was conducted prior to [and shortly after] removal, no scheduling order has been issued or trial date set," Modlin, 2021 WL 9816247, at *7, nor has any of the parties submitted a "motion[] for summary judgment . . . [to] suggest[] that [they] view the case as ripe for dispositive resolution," Mansaray v. Mutual Benefit Ins. Co., Civ. Action No. 17-98, 2017 WL 2778824, at *5 (D. Md. June 26, 2017). (See Docket Entry 11 at 1-3; Docket Entries dated July 3, 2025, to present.)

Moreover, even if Defendants had raised concerns regarding unfair prejudice, "[i]t would have been foreseeable to

---

7 Of course, "[D]efendants have a fundamental interest in retaining a federal forum." Woods v. AlliedBarton Sec. Servs. LLC, Civ. No. 11-2831, 2012 WL 439694, at *4 (D. Md. Feb. 9, 2012); see also McKinney v. Board of Trs. of Mayland Cmty. Coll., 955 F.2d 924, 927 (4th Cir. 1992) ("[B]y providing for removal in the first place, Congress seems to believe that the defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice."). But neither the record nor Defendants' pleadings raise concerns beyond that basic interest, which arises in every case of this sort.

14

Defendant[s ] from the outset of this action, based on the nature of Plaintiff['s] lawsuit originally filed in state court and involving only state law claims[,] that federal jurisdiction premised on diversity might be destroyed with the addition of other defendants." Plemmons, 2012 WL 13008154, at *3. Therefore, "[t]he Court [should] not [find any basis to] believe Defendant[s ] will be unduly prejudiced by a remand to state court." Id.

"Courts also consider issues of judicial economy . . . when analyzing a request to add a non-diverse defendant," Modlin, 2021 WL 9816247, at *7, including the "costs of litigating the same accident in both federal and state court," Martin v. Leacock, No. 1:05cv218, 2005 WL 2587940, at *1 (W.D.N.C. Oct. 13, 2005). Invoking similar concerns (see Docket Entry 11 at 3 ("[T]wo suits [would] . . . waste [ ] judicial resources . . . .")), Plaintiff adds that "[her] claims against DW Express remain unbarred by the [applicable] statute of limitations" (id.; accord Docket Entry 9 at 3). "Though this reduces somewhat the injury to [P]laintiff['s] interest from a denial of joinder, the result would be the kind of parallel litigation the Fourth Circuit has cautioned against." Woods v. AlliedBarton Sec. Servs. LLC, Civ. No. 11-2831, 2012 WL 439694, at *5 (D. Md. Feb. 9, 2012); see also Mayes, 198 F.3d at 463 (noting "danger of parallel lawsuits in federal and state court, which may spawn . . . inefficient use of judicial resources" (internal quotation marks omitted)). Considering the particular

15

weight courts have afforded judicial economy in this context, <u>see, e.g.</u>, <u>Jolley ex rel. Ferree v. United Parcel Serv.</u>, No. 1:06cv357, 2006 WL 3531621, at *1, 2-3 (W.D.N.C. Dec. 6, 2006) (allowing joinder despite plaintiff's knowledge of nondiverse defendant's identity prior to removal and despite the motion's purpose of defeating jurisdiction because of, in part, "the clear waste of federal and state judicial resources"), that concern also counsels in favor of remand here.

"[On] balance[,] the equities [favor] . . . permitt[ing Plaintiff] to join a nondiverse defendant." <u>Mayes</u>, 198 F.3d at 463. As noted above, (i) Plaintiff brings the Motion pursuant to new information, not to defeat jurisdiction; (ii) Plaintiff filed the Motion reasonably promptly after fully learning of DW Express's identity; (iii) maintaining a parallel suit against DW Express in state court would unnecessarily subject Plaintiff to added costs and potentially inconsistent rulings on intertwined claims; and (iv) granting the Motion would conserve judicial resources without unfairly prejudicing Defendants.

<b><u>CONCLUSION</u></b>

All relevant factors support allowing Plaintiff's joinder of DW Express.

16

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 9) be granted and the case remanded to the North Carolina Superior Court of Cabarrus County.

This 26th day of March, 2026.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

17